STOKES BROS. MFG. CO. v. HELLER et al.

(Circuit Court, D. New Jersey. July 26, 1899.)

1. PATENTS—PATENTABLE PROCESSES—FUNCTION OF MACHINE.

A method or process involving merely the mechanical operation of a combination of mechanical elements, without any chemical or other elemental operation, as in the case of a machine for cutting or punching from a blank and forcing up into proper position the teeth of a rasp, is not the proper subject of a process patent.

2. SAME—RASP-CUTTING MACHINES.

The Stokes patents, Nos. 376,400 and 397,254, for rasp-cutting machines, cover a new, useful, and patentable invention, but the claims must be limited to the specific combinations shown and described, and are not infringed by machines not having such an arrangement of parts as will enable it to perform the work done by the machine of the patent.

3. SAME—RASPS.

The Stokes patent, No. 383,999, for a rasp, as an improved article of manufacture, construed, and held valid, and not infringed.

4. SAME.

The Stokes patent, No. 408,936, for a process or method of forming teeth on a rasp blank, is void as covering the mere mechanical operation or function of a machine.

This was a suit in equity by the Stokes Bros. Manufacturing Company against Elias G. Heller and others for alleged infringement of certain patents relating to the manufacture of rasps.

William H. Doolittle, for complainant.
John Dane, Jr., for defendants.

KIRKPATRICK, District Judge. The bill of complaint in this cause charges the defendants with infringement of certain patents owned by the complainant, and prays for an injunction and account. The answer denies infringement, and sets up want of novelty by reason of prior patents and publications. The patents sued upon are as follows: No. 376,400, dated January 10, 1888, to James and George Stokes; No. 383,999, dated June 5, 1889, to Philip Stokes; No. 397,254, dated February 5, 1889, to Philip Stokes; No. 408,936, dated August 13, 1889, to Philip Stokes. Two of these patents (No. 376,400 and No. 397,254) relate to rasp-cutting machines, one (No. 383,999) to the improved article produced, and one (No. 408,936) for the method of forming teeth on a rasp blank. The most satisfactory method of forming rasp teeth prior to the time of Stokes, the complainant in this case, was by hand. The teeth were punched up from the rasp blank by means of a punch struck with a hammer and held by the hand of the operator. Each tooth was punched separately, and was entirely dependent for its regularity upon the skill and care of the eye and hand of the operator. Consequently the teeth varied greatly in size and shape, and the depth of the indentation from which each tooth was cut was also variable, and often too deep for the best working of the rasp. It is true that before the Stokes inventions efforts had been made, with more or less success, to obviate the necessity of using the hand-punching method, and to construct machines for punching rasps automatically, and a number of patents granted for rasp and file cutting machines have been cited to show that the art was well advanced, and that Stokes was not a pioneer; but for the most part the inventions related to means for cutting files. Stokes' patent relates to rasps as distinguished from files, and his machines are essentially rasp-cutting machines. The improvement was one which looked to the better formation of rasp teeth. The apparatus was not that adapted peculiarly to cutting by an angularly inclined chisel the teeth of a file each of which is but a burr extending entirely across the surface of the file at an angle, and raised therefrom by the impact of a cutter moving in a practically straight line, but was expressly for the purpose of punching up the metal from a blank, and forming rasp teeth thereon, which are distinctly different both in their formation and uses. In cutting files, the cutter is forced into the body of the metal in a nearly straight line, inclined to the surface of the file blank. In cutting rasps, the operation differs as much from this as does the rasp tooth differ from the file tooth. In forming rasp teeth, the cutter point enters the metal at a small angle, but upon the continued application of the pressure tending to force the punch into the rasp blank the angle changes, and the cutter takes a curvilinear gouging motion,

and digs out, as it were, the metal from the body of the blank, and forces it up into the form of a rasp tooth, leaving a furrow indicating the path of the cutter directly in front of each tooth. The line of motion of the file cutter is nearly straight, and at an angle with the surface of the blank. The line of motion of the rasp punch is that of a curve something like a parabola, and differing entirely from the motion necessary in an apparatus for cutting files. File-cutting machines operating automatically in the manner above suggested do not anticipate the Stokes device for cutting rasps. There are also several patents for rasp-punching machines which are relied upon by the defendants as being anticipations of the patents in suit, but neither in the specifications nor drawings is there found evidence that the patentees either conceived the same necessity for improvement in the art as did Stokes, or embodied in their mechanisms the same combination of elements for the attainment of similar results. The combinations forming the machines set out and described in letters patent Nos. 376,400 and 397,254 were new and useful inventions. So far as the record shows, they were not conceived by any other person at an earlier date, but were, for the purpose he designed them to accomplish, new additions to the art of making rasps. They were the successful result of an attempt to make new and useful improvements in the art in a new and practical manner. The purpose accomplished by these machines of Stokes was the production of a rasp having certain distinct peculiarities and new features different from the hand-punched rasp or those automatically punched by other devices. The teeth are now perfectly formed, are more uniform in shape and size, and are of greater length, though raised from recesses of less depth than rasps made in the usual manner. They possess great strength, being re-enforced by the surplus metal forced into them by the curvilinear motion of the rasp punch, and can be brought to a very sharp point without curling or breaking. The shallow recesses from which they are punched are curved, and do not, therefore, so easily clog when in use. The rasp was an improved new article, and therefore patentable. In my opinion, the patents No. 376,400, No. 397,254, and No. 383,999 are valid, as new and useful inventions. There is, however, the patent No. 408,936, dated August 13, 1889, granted to Stokes for the method or process used in forming the particular kind of rasp teeth claimed by him as an invention. The process is simply the mechanical operation of a combination of mechanical elements. There is no chemical or other similar elemental action involved in producing the desired result. This being true, we find that the operation as described is simply the function of the rasp-cutting machines, and as such not the subject of a patent. Locomotive Works v. Medart, 158 U. S. 71–84, 15 Sup. Ct. 745.

It remains to be considered whether the defendants infringe the claims of these valid patents. It is apparent that the body of Stokes' invention lies in the peculiar appliance which he devises for holding the rasp punch so that it may take on the particular movements necessary to form that kind of rasp teeth he undertakes to produce. The importance of having the proper adjustment and freedom to the punch-holding apparatus is very great. Without it, a Stokes-shaped

rasp tooth could not be formed. This is so because the character and form of the rasp tooth is almost entirely dependent upon the shape of the cutter, the number of blows given to it, and the angle at which it is held during the operation of cutting it. It is upon this freedom of movement of the punch holder, and consequently upon the construction thereof, and its relation to the other elements of the machine, that the angle and line of motion of the punch depend. In considering the question of infringement by the defendants it will be sufficient to confine ourselves to a comparison of that part of complainant's and defendants' apparatus which has to do with holding the punch and controlling its movements during the operation of forming the rasp tooth. Let us observe what a comparison of the devices shows. Claim 5 of patent No. 376,400 is as follows: "In a rasp-cutting machine, the combination of a punching hammer head, E, the adjusting screw, 33, the flat spring, and the punch, 34, substantially as set forth;" and claims 1, 2, 3, 6, and 10 of patent No. 397,254 are in these words: Claim 1: "The punch stock held in the anvil frame, and pivoted at or about its center, in combination with a spring or springs applied to its upper end above the pivot, the cutter or punch being held in the stock with its point below the pivot, substantially as shown and described." Claim 2: "The hammers, J and J', acted upon by springs and cams, one preceding the other, in combination with the anvil frame, and the punch stock, and the punch, substantially as described." Claim 3: "The anvil frame and pivoted punch stock, H', in combination with the two hammers, J, J', and means for operating the hammers so that one will deliver its blow before the other, substantially as described." Claim 6: "The punch stock, H', attached to rod, H², and punch stock, laterally in combination with the hammers, means for operating them, the table, F, feed table, F', and means for moving the same, substantially as described." Claim 10: "The inclined table, F, the punch stock, means for operating them, in combination with the feed table, F', held in the inclined table, F, and means for intermittently moving the same longitudinally, substantially as described." The state of the art at the time the complainant's patents were granted requires us to limit the claims and the embodiment thereof to the exact form of apparatus shown and described by the patentee. We cannot read any unexpressed intention or construction into them. The defendants' machine, to be an infringement, should embody the combination of elements claimed or described in the patent or shown on the drawings attached. The record fails to show that the defendants' apparatus or machine for cutting rasps embodies any or all of the claims above set forth.

The evidence of complainant relating to infringement consists of the testimony of two former employés in the defendants' factory, Bock and Hoefle by name, who attempt to describe the construction of the defendants' machines, and give a description and explanation of their method of operation which will enable their expert, who has not seen the machines, to find similarities which he characterizes as infringements. In so far as these witnesses testify to the infringing character of defendants' machines, it is contradicted by Mr. Abbott,

defendants' expert, who has had the opportunity to see and carefully examine the machines. The value of the testimony of Bock and Hoefle is, when taken as a whole, very small. Bock, upon cross-examination, admits that when he visited the defendants' factory in 1893 he paid no particular attention to the machines then in use; that he merely glanced at them, probably three-quarters of a minute, could not tell how many he saw; that he neither examined nor could describe them. Respecting the machine he worked upon while in defendants' employ making rasps, he says it was about the same as the Weed cutting machine, and later admits that he knew little or nothing of the Weed machine. He undertook to give a description of the rasp-cutting machine in use by defendants when he was in their employ, and upon which he worked making rasps, but such attempted description was vague, indefinite, and practically unintelligible. He says it was about the same as the Weed cutting machine, of which he afterwards admits he knew little or nothing. Hoefle's testimony was equally vague and indefinite. When asked to describe the defendants' machines, and their operation in cutting, he failed entirely, replying: "That's a hard thing to do: I could not explain the proper condition, that's sure." This answer is characteristic of all his testimony. On the other hand, Mr. Elias Heller testifies that the machines used by the defendants are identical with the Weed machine, except that he had added a rachet arrangement for controlling the movement of the carriage carrying the rasp blank; that the machines now in use by defendants, or those similar thereto, have been used by defendants up to the time of beginning this suit, and prior thereto for some 15 years. That, while slight modifications in their machines have been made from time to time, yet in none has there been a change in the punch-holding apparatus for the purpose of attaining in it more flexibility of movement. In so far as Bock testifies to the infringing characteristics of defendants' machine, he is contradicted by Mr. Abbott, the expert witness of defendants, who has had the opportunity to see, and has carefully examined, the same, and who points out with clearness the differences between them and that covered by complainant's patents. Comparing the defendants' machine, as he saw it, with claim 5 of patent No. 376,400, he says that the defendants' machine has no hammer head in the lower part of the hammer, which has pivoted thereto, and forming a part thereof, a tooth-holding frame; the defendants' hammer being entirely separate from his tool holder, and capable of being moved independently. It has no screen which in location or function corresponding with the adjusting screw, 33, of the patent in suit, nor any spring either similarly located or with a similar function to spring 32 as set out in the patent. The machine used by defendants has not such an arrangement or combination of parts as will enable it to perform the work done by complainant's machine. It will be observed that of the claims of the patent No. 397,254 which are charged to be infringed Nos. 1, 2, 3, and 6 have, in combination, an anvil frame as one of the elements performing a necessary function. In claim 1 it has pivoted to it a punch stock; and claims 2, 3, and 6 call for it in combination with a plurality of hammers, each actuated with an

independent spring. Claim 6 calls for a plurality of hammers, with separate springs for actuating them. I am satisfied from the evidence that the defendants' machines contain neither an anvil frame with pivoted punch stock, nor a plurality of hammers with separate springs, and that these are material differences between the devices, both in the particular construction of the elements in the manner and order of their combination, and in the function performed by each. In my opinion, the defendants' machines do not infringe any of the claims of the patents. The differences in the machines above noted are of such a character as necessarily to produce a different result. We have already referred to the distinctive marks and advantages of the rasps made by the complainant's machines. These we consider to be the result of the manner of their manufacture. Rasps made on defendants' machines differ materially from those of complainant, and lack so many of the peculiarities which are claimed to be advantages that I cannot, on the record, adjudge them to be similar or infringing. The complainant's bill should be dismissed.